UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARLEEN HOTH, | No. 2:13-cv-2224 CKD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter under sentence four of 42 U.S.C. § 405(g) for further proceedings.

BACKGROUND

Plaintiff, born December 6, 1954, applied on November 19, 2010 for DIB, alleging disability beginning May 1, 2005. Administrative Transcript ("AT") 103. Plaintiff alleged she was unable to work due to fibromyalgia, degenerative disc disease, cervical radiculopathy, and cardiac vessel spasms. AT 132. In a decision dated April 25, 2012, the ALJ determined that

plaintiff was not disabled.[1]  AT 24.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2005 through her date last insured of December 31, 2010.
>
> 3.  Through the date last insured, the claimant had the following severe impairments: fibromyalgia, degenerative joint disease of the left knee, degenerative disc disease of the lumbar spine and obesity.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1]   Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(a).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-76; Bowen v. Yuckert, 482 U.S. 137, 140–142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work . . . except the claimant could not sit for more than fifteen minutes at one time for a total of six hours in an eight-hour day; could stand for fifteen minutes at any one time without sitting, walking, or laying down not to exceed six hours in an eight hour day, could not walk for more than fifteen minutes at one time for no more than six hours in an eight-hour day; in addition to scheduled breaks, the claimant would require one unscheduled break in the morning and one unscheduled break in the afternoon, could never crouch, rarely twist, stop or bend, must avoid climbing ladders, ropes and/or scaffolds, could climb stairs frequently, and could repetitively handle and/or finger on a frequent basis.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a medical assistant. This work did not require the performance of work related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, at any time from May 1, 2005, the alleged onset date, through December 31, 2010, the date last insured.

AT 19–24.

ISSUES PRESENTED

Plaintiff argues that the ALJ improperly evaluated her credibility, improperly discredited the opinion of her treating physician, posed an incomplete hypothetical to the vocational expert, and failed to fully develop the record.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

1 rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

2  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Plaintiff's Credibility

Plaintiff contends that the ALJ failed to provide sufficient reasons for discrediting her subjective complaints. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873–74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345–47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

01; SSR 88-13.  Work records, physician and third-party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff reported that she was unable to work due to a combination of impairments including fibromyalgia, degenerative disc disease, cervical radiculopathy, and cardiac vessel spasms.  AT 132.  At the hearing before the ALJ, plaintiff testified that she feels pain all the time, cannot concentrate at work or at home, cannot hold a pencil for any length of time, cannot hold a steering wheel with her right hand and cannot lay on her left or right side because of hip pain.  AT 42–43.  The ALJ found plaintiff's statements concerning the intensity, persistence and limiting effects of plaintiff's symptoms not credible based on the routine and/or conservative nature of plaintiff's treatment, the lack of objective evidence in support of her physical impairments, the effectiveness of plaintiff's medication regimen, the ability of plaintiff to work despite her impairments, and plaintiff's daily activities.  AT 23.  The court finds that plaintiff's course of treatment and ability to perform part-time work despite her impairments are sufficient reasons to discredit her.

Plaintiff contends that her treatment has not been conservative.  "Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."  Parra v. Astrue, 481 F.3d 724, 751 (9th Cir. 2007) (finding that medication with over-the-counter drugs constituted conservative treatment); see also, Tommasetti v. Astrue, 533 F.3d 1035, 1040 (conservative treatment included physical therapy and the use of anti-

inflammatory medication); Tagle v. Astrue, 2012 WL 4364242 at *4 (C.D. Cal. Sept. 21, 2012) ("While physical therapy and pain medication are conservative, epidural and trigger point injections are not."). The ALJ noted that plaintiff received conservative treatment for her pain which consisted of physical therapy and a variety of medications. AT 258, 263, 276–77, 286, 428–29, 493. Plaintiff has received some injections. AT 319 (2008 hip injection for trochanteric bursitis); 332 (2007 hip injection); 345 (2007 cortisone injection in left knee); 506-07 (2011 cortisone injection in right knee after injury to the same). However, these sporadic injections are unlike the epidural injections and series trigger point injections used to treat the plaintiff's fibromyalgia and degenerative disc disease, in Tagle. 2012 WL 4364242 at *4. The ALJ also noted that plaintiff was advised to exercise and use ice and/or heat to alleviate her back pain. AT 23, 266. The ALJ did not err in concluding that plaintiff's course of treatment was conservative. Plaintiff's conservative treatment plan alone is a sufficient reason to discredit her.

The ALJ also discredited plaintiff because, despite her impairments, plaintiff was capable of performing part-time work. AT 23. In support, the ALJ cited a report in which plaintiff stated that she had experienced chronic joint and back pain since 2004. AT 23, 439–40. According to the ALJ, this report coupled with the fact that plaintiff had worked part-time after the alleged onset date strongly suggested that plaintiff's condition would not have prevented her from working throughout the relevant period. AT 23. Plaintiff contends that the ALJ's reliance on her part-time work was insufficient to discredit her testimony. Plaintiff testified that she was babysitting three children, approximately three times a week, for four to six hours, that she was paid approximately $300 to $400 per month and that she maintained that work from 2008 to 2011. AT 32–35. Plaintiff's ability to perform part-time work despite her chronic joint and back pain lends to discrediting the intensity and limiting effects of plaintiff's symptoms. The ALJ set forth clear and convincing reasons for discounting plaintiff's subjective complaints and, thus, did not err in discrediting plaintiff's subjective complaints.

/ / /

/ / /

/ / /

B.  Medical Opinion of Dr. Todd Fisher

Plaintiff contends the ALJ improperly discredited portions of Dr. Todd Fisher's opinion regarding plaintiff's work attendance limitations. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Magallanes v. Bowen, 881 F.2d 747, 751 (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors[], are correct." Embrey v. Bowen, 849 F.2d 418, 421–22 (9th Cir. 1988). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (*e.g.*, supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751).

Dr. Fisher, a treating physician, provided a Physical Residual Functional Capacity Questionnaire dated October 21, 2010. AT 481, 484. Dr. Fisher diagnosed plaintiff with fibromyalgia and noted plaintiff's symptoms included back and hip pain as well as fatigue. AT 481. He described the severity of plaintiff's pain as moderate-to-severe and that it worsened with activity. Id. He found that plaintiff had multiple muscular tender points which are consistent with fibromyalgia. Id. Dr. Fisher opined that plaintiff's pain and other symptoms would interfere

with the attention and concentration necessary to sustain simple, repetitive work tasks. He further opined that plaintiff cannot sit for more than 15 minutes at any one time, cannot stand for more than 15 minutes at any one time before needing to sit down, walk around or lie down, could sit, stand and/or walk for six hours total in an eight-hour work day, would require unscheduled breaks in addition to the usual three, and has the capacity to perform light work. AT 482–83. Dr. Fisher also opined that plaintiff's limitations would likely produce good and bad days, which would result in plaintiff being absent from work at least four days per month. AT 484.

The ALJ gave substantial weight to Dr. Fisher's opinion except to the portion relating to plaintiff's work attendance limitations and the conclusion that plaintiff was "disabled."[2] AT 21-22. The ALJ found these portions of Dr. Fisher's opinion unpersuasive because they were unsupported by other evidence. AT 22. The ALJ explained that treatment records revealed generally benign findings, citing to an October 20, 2010 x-ray study which revealed minimal scoliosis and minimal osteophytes as an example, and conservative treatment. AT 22.

Plaintiff contends that the ALJ erred in rejecting Dr. Fisher's opinion regarding plaintiff's work-attendance limitations. In particular, plaintiff asserts that the x-ray to which the ALJ relied upon in partially rejecting Dr. Fisher's opinion cannot confirm or deny the existence of plaintiff's fibromyalgia, and, thus, the ALJ erred by relying on a misunderstanding of fibromyalgia in rejecting the opinion of Dr. Fisher. Plaintiff cites Benecke v. Barnhart in support of this argument. In Benecke, the Ninth Circuit concluded that the ALJ erred in discounting the evaluations of the claimant's treating physicians, because the ALJ relied on his disbelief of the plaintiff's symptom testimony and his misunderstanding of fibromyalgia. Id. In doing so, the Ninth Circuit provided the following description of the disease:

> [F]ibromyaglia, previously called fibrositis, a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue. Common symptoms, all of which [claimant] experiences, include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a

---

[2] The ALJ rejected Dr. Fisher's conclusion that plaintiff was "disabled", stating that the ultimate determination is reserved for the Commissioner and not a medical finding. AT 22. A review of Dr. Fisher's treatment notes reveals that Dr. Fisher made no such opinion. Rather, the record in question stated "[d]ebility due to fibro." AT 264.

> pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with the disease. Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis.

Id. at 589–90 (internal citations omitted). Accordingly, generally benign findings and x-rays revealing minimal scoliosis and osteophytes do not provide a sufficient basis for rejecting a finding of fibromyalgia. However, in this instance, the ALJ did not reject plaintiff's diagnosis of fibromyalgia. AT 19 (listing plaintiff's fibromyalgia as a severe impairment). Rather, the ALJ discredited a specific portion of Dr. Fisher's opinion for which there was no objective evidence in support. AT 22. The only evidence to support plaintiff's work-attendance limitations, as described by Dr. Fisher, was plaintiff's testimony and subjective complaints, which the ALJ found not credible. AT 22–23. Accordingly, the ALJ did not err in partially rejecting the opinion of Dr. Fisher.

    C.  <u>Duty to Develop the Record</u>

Plaintiff contends that the ALJ failed to develop the record because plaintiff's treatment records from 2003 to 2007 were missing. AT 36-37, 40. Disability hearings are not adversarial. See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (ALJ has duty to develop the record even when claimant is represented). Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be some objective evidence suggesting a condition that could have a material impact on the disability decision. See Smolen, 80 F.3d at 1288; Wainwright v. Sec'y of Health and Human Servs., 939 F.2d 680, 682 (9th Cir. 1991). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288.) The ALJ can develop the record by (1) making a reasonable attempt to obtain medical evidence from the claimant's

1   treating sources, (2) ordering a consultative examination when the medical evidence is incomplete
2   or unclear and undermines ability to resolve the disability issue; (3) subpoenaing or submitting
3   questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open
4   for supplementation. See id. The ALJ's decision may be set aside due to his failure to develop
5   the record if the claimant can demonstrate prejudice or unfairness as a result of said failure. Vidal
6   v. Harris, 637 F.2d 710, 713 (9th Cir. 1991).

7         Plaintiff testified that she stopped working in 2005 because she experienced numbness
8   and tingling in her shoulder and her hand. AT 36. Plaintiff further testified that, as a result, she
9   could not hold a pencil and could not hold a cup of coffee. Id. The ALJ then indicated that
10  plaintiff's records from 2005 to 2007 were missing, but asked plaintiff about the treatment she
11  received for her hand. AT 37. Plaintiff testified that her treatment during that time period was
12  through the workers' compensation system. Id. Plaintiff also testified that in 2007 she was
13  diagnosed with cervical radiculopathy, and, prior to that time, she already started seeing a doctor
14  for degenerative disc disease and fibromyalgia. AT 40. In response, the ALJ indicated since the
15  date of plaintiff's Title II application was November 2010, the earliest plaintiff could receive
16  benefits would be in 2009. AT 41. Since the ALJ had records dating back to 2008, the ALJ
17  concluded that most of the pertinent treatment records were already in the record. Id. The ALJ's
18  failure to include plaintiff's treatment records from 2003 to 2007 prejudiced plaintiff because the
19  missing records concern treatment during the alleged onset of plaintiff's disability and showed
20  treatment of her cervical radiculopathy. Accordingly, the ALJ failed to fully develop the record
21  with respect to plaintiff's treatment records from 2003 to 2007.

22        In addition, the record is ambiguous as to the severity and effects of plaintiff's
23  fibromyalgia. Dr. Carolyn Dennehey, a rheumatologist, examined plaintiff and gave plaintiff a
24  working diagnosis of fibromyalgia. AT 267. In Dr. Dennehey's exam, she noted that plaintiff
25  had minimal tender points in the upper back, shoulders, and lower back and no tender points on
26  the anterior chest, elbows or knees. AT 266. Dr. Dennehey also questioned whether some of
27  plaintiff's fibromyalgia symptoms could have been caused by mechanical issues. AT 267. Dr.
28  Dennehey did not provide a functional limitation assessment for plaintiff. On the other hand, Dr.

1  Fisher, an internist, provided a physical residual functional capacity questionnaire (discussed
2  above) diagnosing plaintiff with fibromyalgia and finding "multiple muscular tender points
3  consistent with fibromyalgia." AT 477.  Given the nature of fibromyalgia and the complexity of
4  diagnosing the disease, the record would benefit from a consultative examination by a board
5  certified rheumatologist, opining as to the limiting effects of plaintiff's fibromyalgia.

6      For these reasons, this matter will be remanded so that the ALJ may fully develop the
7  record with respect to plaintiff's treatment records from 2003 to 2007 and obtain a consultative
8  examination of plaintiff by a board certified rheumatologist.

9  CONCLUSION

10      For the reasons stated herein, this matter will be remanded under sentence four of 42
11  U.S.C. § 405(g) for further development of the record and for further findings addressing the
12  deficiencies noted above.  Accordingly, IT IS HEREBY ORDERED that:

13      1. Plaintiff's motion for summary judgment (ECF No. 15) is granted;
14      2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is denied; and
15      3. This matter is remanded to the Commissioner for further proceedings consistent with
16  this order.

17  Dated: November 18, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

22  10/4 hoth.2.ss